First case up is Griffith v. United States. Ms. Olmstead. Thank you, Your Honor. The question in this case is simple. Should the court below have granted Mr. Griffith an evidentiary hearing based on his specific 2255 pleading? The answer is yes. Mr. Griffith went above and beyond the minimum required to get a hearing in this case. This court cannot say that the files and records of Mr. Griffith's Mr. Griffith's case conclusively show that he's not entitled to relief. Mr. Griffith pled facts that if true, prove that his counsel was ineffective for failing to familiarize himself with binding case law and failing to argue based on that case law that the weight of drugs attributable to him should not have included the five liquid seized from his home. The standard for hearing on a 2255 motion is extremely low. If a petitioner pleads facts that if true, entitled him to relief, the court must hold a hearing. Let me ask you about a finding the magistrate judge made, and you tell me whether it's right or wrong. And in his R&R, the magistrate judge says there is no evidence apart from Griffith's unsubstantiated assertion that the liquid carrier medium included unusable waste. Tell us what's wrong with that finding. Your Honor, there are several things wrong with that statement. First, evidence is not required at this stage. All that is required is facts that, if true, provide him for relief. So he did not have to provide evidence to support the facts that he says all you provided was your clients unsubstantiated assertion. Tell us why that finding is wrong. Your Honor, the assertions do not have to be substantiated at this point. And I would point the court to a Fifth Circuit case, United States v. Reed. That says the petitioner is entitled to an evidentiary hearing if he asserts specific factual claims based on his personal knowledge. So if the facts are specific enough, you don't have to provide additional proof. Unless they're contradicted by facts in the record. Yes. And, Your Honor, none of the assertions in this case are contradicted by facts in the record. In fact, they're consistent with many of the facts presented by the government. The government presented no evidence during the trial to show that these liquids were usable or marketable in any form. Let me ask you about the chemist's testimony because I found that very interesting. And I tried some methamphetamine just a long time ago. But in these jars, as I understand it, they had bilayers. Yes. And so the bottom layer in each jar, as I understand the chemist's testimony, did not contain any trace of methamphetamine or ephedrine or pseudoephedrine, which is the precursor chemical used to make methamphetamine. So that wasn't counted at all. But the other layers, I think there were two other layers in each jar, did have traces of either pseudoephedrine or methamphetamine. Now, under our precedence, don't we count the entire weight of the liquid whenever there is even a trace of pseudoephedrine or methamphetamine? No, Your Honor, unless there's proof that that mixture is usable in its current form. In Rolando Gabriel, the court had a bag of liquids with cocaine and a cutting agent inside. There, the court said it was improper to count the liquids because the cocaine was unusable when mixed with the liquids. So something is only a mixture of substance containing a detectable amount of methamphetamine if it's mixed with something that can be consumed with the drug. And in this case, Mr. Griffith asserts that the liquids were unusable and in fact toxic and therefore could not be consumed with the drugs and therefore did not fall under the definition of a mixture of substance containing a detectable amount of methamphetamine. What if they can be used to produce the drug, though? Your Honor, in this case, there was no evidence that these were currently in production. In fact, Mr. Griffith pled that it was left over from production. And in United States v. Newsom, this court said that if it is in production, the proper way to determine the weight is to have somebody testify about how much could be produced from that, and that's the weight you use. And here there was absolutely no testimony about how much could be produced from these liquids. Mr. Griffith pled extremely specific facts in this case. He pled that the liquids seized from his home were unusable, unmarketable, and toxic. He pled that the liquids were not cut with anything, could not be ingested in their current form, and were not meant to be consumed. And he also pled he told the lawyer all that. Yes, he did. He pled that he repeatedly told his lawyer that they were improperly counting the drug amount. He also pled that he asked his lawyer to review these cases and make this challenge. Additionally, he pled that expert testimony would prove that these liquids were toxic, unusable, and unmarketable. And expert testimony would also prove that 50 grams or more of methamphetamine could not have been produced from these liquids. These facts is true entitled to Mr. Griffith to relief under Strickland. Counsel's failure to investigate binding case law and read commentary to the sentencing guidelines 2D1.1 was objectively unreasonable. Prevailing professional norms require counsel to research relevant issues in this case. Let me ask you this. I don't remember where I got this, but I seem to recall from the briefs, I think, that at some point defense counsel actually sat down with the United States Attorney's Office and the U.S. Attorney or Assistant U.S. Attorney explained what the chemist was saying about these bilayer liquids and so forth. And after hearing all of that and after investigating that, defense counsel made a determination that the calculation was correct. How can that be ineffective assistance of counsel? Your Honor, merely talking with probation and the prosecutor, which is what occurred in this case, cannot be considered sufficient representation. First, the determination was incorrect that he received from him, and he had an independent duty to research the law and make a legal argument based on the evidence in the case that is in his client's favor. On top of this, it's even more egregious because Mr. Griffith told him that he believed that he was interpreting the law incorrectly. All counsel had to do was research these cases and read them, and he failed to do that. And I think his affidavit in this case supports that conclusion. He says in his affidavit, quote, I don't know what the petitioner means by usable, but I assume that he means the amount of substance which, if ingested, will get the necessary effect, unquote. These are not the definition of usable asserted in Rolanda Gabriel, Newsom, and the other 11th Circuit cases on this point, which shows that he was unfamiliar or misunderstood those cases. Ignorance on a point of law is a quintessential example of deficient performance under Strickland, and the United States Supreme Court said that. If the liquid was a carrier medium or a cutting agent, the sentence was proper, was it not? If the liquid was a cutting agent that could be consumed with the drug, then it is a mixture of substance containing a detectable amount. Item four alone, the top layer was 106.20 grams, was it not? Exhibit four? Yes, I believe that's correct. But there was no proof in this case that the methamphetamine was mixed with a cutting agent. And at this point, we have to assume the facts pled by Mr. Griffith are true, and he true pled that it was not a cutting agent and was in fact toxic and would be fatal if ingested. What is, do we have, I'm not suggesting we have to if the guidelines are clear, but do we have any binding precedent holding that the non-usable and non-marketable part is not to be included? Your Honor, I would say that Rolanda Gabriel and Newsom reached that conclusion on the facts of those cases. They don't necessarily specifically quote the language from the sentencing guidelines because that was adopted after some of those cases. But the reason the court or the reason the Sentencing Commission added that language to the guidelines was to fix the problem created in Chapman and the fact that there was a circuit split over whether or not to include unusable liquids as part of the calculation. And the commentary to the guidelines that was added after Chapman specifically says, quote, mixture of substance does not include materials that must be separated from the controlled substance before the controlled substance can be used, unquote. And I think that that is extremely clear that something cannot be classified as a mixture of substance containing a detectable amount of a controlled substance if it has to be separated, if the liquid is unusable or unmarketable. This court has directly defined unmarketable in Rolanda Gabriel. They define unmarketable as not ready for retail at the street level or for wholesale by the big drug kingpin. There was absolutely no evidence in this case that these liquids were ready for retail or wholesale. And in fact, there is evidence that they were not. Counsel's decision not to pursue this defense in this case cannot be considered strategic. A decision can only be strategic if it's made after a reasonable investigation. Not reading the case law is directly contrary to reasonable investigation. So counsel was unable to make a strategic decision whether to pursue this case because he was not familiar with a binding case law from the circuit. Mr. Griffith also pled facts that proved prejudice. Mr. Griffith was sentenced to 188 months based on a guidelines range of 188 to 235. That's excluding the mandatory drug count that for 2.4 grams of meth, which the petitioner pled was the most he could have possessed. The guidelines range is 21 to 27 months for 2.4 grams of pseudofedrin, which is what Mr. Griffith pled he started with. And your argument is under Malina Martinez. Any difference in the guideline range is a reasonable probability of a different result. Yes, absolutely, Your Honor. And I would point out in this case, the district court twice said he was relying on the guidelines range and gave no other reason for issuing this sentence. And then, in fact, sentenced Mr. Griffith to the very bottom of the guidelines range. Thank you, Ms. Olmstead. You've got your three minutes on reply. Ms. Stewart. Thank you. Good morning. May it please the court. My name is Sandra Stewart and I'm representing the United States in this appeal. The issue before the court is whether the district court abused its discretion in denying the evidentiary hearing on an ineffective assistance to counsel claim concerning the weights of the methamphetamine. I thought it was whether the 2255 motion had pled facts, which, if true, would entitle him to release. That is correct, Your Honor. And the magistrate judge, you can't, we can't rest on the magistrate judge's reasoning, can we? There's no testimony or factual findings regarding the usability or marketability of the drug mixtures in the case. I mean, that's the whole reason you have an evidentiary hearing. That is true, but I don't think that that resolves the claim in this case. We have to look at it. But it shows magistrate judge's reasoning is wrong. Because he found that you couldn't prove what the usability or marketability was. No, he said because there was no testimony or factual findings regarding the usability or marketability. There was nothing before him. That's why they wanted an evidentiary hearing to prove it. You can't deny somebody an evidentiary hearing on the basis that they haven't proven it yet. No, you can't. You can deny it on the basis of the fact that they haven't alleged sufficient facts to prove that they're entitled to that hearing. My question, though, was that's not what the magistrate judge did. There was no testimony or factual findings regarding the usability or marketability of the drug mixtures in the case. Consequently, the outcome of this case is not controlled by Rolande, Gabriel, or Segura Baltazar. But that's where the facts were developed in those other two cases. In this case, the movement is just asking, here's what I can prove. Let me prove it. And you can't respond to that at the pre-evidentiary hearing stage by saying you haven't proved it. If you could prove it, you wouldn't need evidentiary. But you have to allege the facts. If true. He did. What did he not allege that he had to allege to make out his claim? He claims that he started with 2.4 grams of methamphetamine and that you cannot produce 50 grams or more of methamphetamine. He doesn't say he doesn't specifically say that he doesn't talk about the usability of the liquids. He says most of them were waste material. He talks about they're not usable in their current form. Sorry to interrupt. I mean, isn't that talking about the usability of the liquids when he says you can't produce that much? You can't produce that much methamphetamine from those liquids. And that's what he is effectively charged with having produced or manufacturing. So, why isn't that alleging sufficient facts to establish entitlement to a hearing? I just I disagree that the facts that he alleged entitled him to the hearing, especially look at the. I understand you disagree, but I don't I guess I don't understand why. And I want to make sure that I'm giving your argument due consideration. So maybe you can explain to me why it is that saying that you can't produce that volume of methamphetamine from that liquid is not saying that it's usable. It's not usable because that's not what the case law says is that you have to be able to produce that amount of methamphetamine from the liquids that exist. But doesn't he also say that the liquids that you would that you would precipitate out the meth from are toxic and not ingestible? I mean, why doesn't that show that that's not usable in its entirety? It's a conclusory statement that it's waste. He doesn't present anything. But why does it have to be anything more than conclusory? For this stage, granted that if he went to an evidentiary hearing, he couldn't just get up there and say that you'd have to have some evidence. But at this stage, why isn't that enough to get to a hearing? Because the case law says unsupported conclusory statements are not sufficient from which you can grant an evidentiary hearing. Yeah, but that's speaking more in terms of the district court miscalculated the amount of methamphetamines in this case. Period. Give me an evidentiary hearing. That's a conclusory statement. A statement that this item four contained X grams, but it was contained in a state that could not be used to produce methamphetamine without additional steps or additional chemicals. And that it wasn't usable when it wasn't a carrier agent. That's I don't know how you get it more specific than more non-conclusory than that. Why don't you do this? This will be helpful. Go down by the pleadings that you say he made that are insufficient. And tell us what a sufficient pleading of that nature would have been. OK, what he pled was he started with 2.4 grams of pseudoethadrine. You can't possibly produce 50 grams of usable methamphetamine, which isn't the isn't the inquiry under the case law from this circuit about how to weigh methamphetamine. But should he have pleaded if he had if it were true and you were pleading for him, what would you have pleaded there? Hypothetically, you would have had to have pled that 2.4 grams of methamphetamine pseudoethadrine would not have been enough. Did not were not sufficient basis from which the court could find that the weight of the methamphetamine attributable to the defendant was 50 grams or more. I thought that's basically what he said. He said you can't even use that to make that much. He's he did say that you can't even use that much to make that much methamphetamine. But the case law doesn't say you have to be able to make marketable methamphetamine. That's all we weigh. What we weigh is the liquid that it comes in. But doesn't it? But the liquid has to be consumable. I mean, it has to be, for example, you know, in the Supreme Court case, the reason why the paper counted was because people ingest the paper when they're taking LSD. The LSD diffuses into the paper and that's how the product is sold. But nobody goes around with a, you know, a beaker of toxic liquid and pours it out when they're selling methamphetamine. And that's how they sell it. That's not that's not the medium by which the drug is distributed. I agree that it is that it isn't distributed in that sense. But when the guideline that talks about specifically the guideline, it defines what you weigh when you're talking about methamphetamine and amphetamines and PCP. It's only it only involves those three drugs. It specifically says you weigh the greater of the weight of all the liquid that it's in. And I think that doesn't the liquid have to be usable? I mean, if the liquid is toxic and you can't use it, then how does that count in that? But the liquid is usable if there's a difference in usability and marketability. And we have that language in the cases of talking about marketability and usability. That liquid is usable is in creating the methamphetamine. Well, let me ask it to you this way. Let's say he had actually followed through and he got caught at the point in time when he had precipitated out the methamphetamine from that solution. Would it have been possible that he could have that he could have had the volume of methamphetamine final product from that from that particular beaker that he had in liquid at the time when he was arrested? I'm a little confused. I mean, if he had the actual may produce methamphetamine is in his right. If he had taken the liquid and he had actually instead of getting caught at the point in time when it was still in process, he got caught at the point in time when he had precipitated out the meth from that mixture. Okay. Okay. How much would he have had at that point? Would it have been the amount that he got sentenced for or would it have been substantially less? I can't answer that question. Well, isn't the answer that it would have been substantially less? And that then you have a problem of sentencing somebody to more time based on when in the process they got caught, which seems I mean, that seems problematic as well under our case law. But also, on the other hand, if you only punish for how much they have at the time of the actual methamphetamine that's in sellability, a sellable form, then you're not punishing them for the manufacturing of that methamphetamine. You're just only punishing them for what they have at the end. Well, but there are other guidelines that punish for the manufacturing. I mean, and there are other ways that that's taken into account. Are there not? There are some ways that it's taken. I mean, right? Right. I'm going to switch gears here because I do have some other arguments. And I understand the court disagrees with me on whether there was sufficient prejudice pled. But this court can affirm for any reason. And I would point out that the defendant, Mr. Griffiths, did not plead sufficient facts to prove that there was a deficient performance here. Contrary to what Mr. Griffiths has argued before this court, his attorney was aware of the case law. Specifically, he specifically references it in the record. But it looks like he may not have read it. I mean, if he had read it, I don't think he would have made the statements that he made. Which statements, Your Honor? About usability. I don't think it's clear from the case law what usability means and marketability means and what we're talking about when you're talking about methamphetamine. It's particularly difficult. And this court has had some cases. And I think Newsom itself is conflicting or hard to understand what is wastewater, what is part of the, what can be weighed in the methamphetamine production process. We have the methamphetamine oil that they say can be weighed. You have the sludge that can't be weighed, that was thrown out. Here we didn't have sludge that was thrown out. We also have him discussing it with the prosecutor of probation. He does seem to understand it, but I don't think it's clear. But even if he didn't understand it. Shouldn't we have a hearing then on that? On what he understood it to be? Yes. I mean, on whether he actually read these cases as opposed to just saying that he was aware of them. But there's no fact that he didn't read the cases and wasn't aware of them. I didn't think the subjective knowledge of the attorney other than as to historical facts. Subjective knowledge of the attorney about the law made any difference under a long line of decisions where we say the question was whether any attorney could have made this decision or taken this tactic or strategy. But we've also held that lawyers don't have to anticipate changes in the law. So we may end up down to the question here of whether there was precedent in our circuit that this was an error. And if it's a clear precedent that this was an error, then he should have raised it. But given the allegations in the motion, which is the client told him, look, I'm an expert. Trust me, this couldn't be used. We'd had to do this and so forth. It seems to me like marketable obviously refers to, seems like it refers to me, unless we have some binding case law to the contrary, as digestible, usable, takeable, the pieces of paper on the LSD. But usable, usable or marketable, usable might refer to the manufacturing process. And this, we're just going to have to really parse the allegations as to whether this was further usable in the manufacturing process and could have. It makes sense. Guidelines for sure don't have to. But it makes sense to say you count all of this methamphetamine. If either you can sell it now and distribute it retail, let's say, or if it can be used in the manufacturing process. And then whether he's alleged that at least some of this couldn't have been. Of course, the allegations don't explain why he still had it on hand. If it couldn't have been used in the process. But I think that maybe you would agree. Let me ask you if you agree that under Melina Martinez, if he should have raised it and if it would have resulted in a different guideline range, then the fact that the district court could have gone under 3553A and given him the same sentence doesn't negate prejudice. Melina Martinez is a case where Justice Kennedy said the third prong of plain error is automatically established. Absent very unusual circumstances, such as a judge saying, I don't care about this. I would give him the same sentence. But it's automatically established whenever there would have been a different guideline range. And it's the same, you know, reasonable probability of a different result. It's the same prejudice requirement. Your Honor, I would disagree that Melina Martinez governs here. And I would disagree. I'm talking about the I'm talking about for the solely for the proposition that if there if he made an error and if he is making the error resulted in a higher sentencing guideline range than it would otherwise have been imposed. Melina Martinez says that establishes a reasonable probability of a different result. Yes, I understand that. That's what Melina Martinez says. But I disagree that the plain error standard and what they found in Melina Martinez on a direct appeal and in reviewing a plain error issue is different than ineffective assistance of counsel claim where we're looking at it on collateral view. And I would point the court to a case solely about prejudice. Solely on the prejudice. I would point the court to a case from this circuit. It's and I provided this morning, United States versus Gordon. It's 518 F third 1291 1298 11th Circuit 2008 in Gordon. The court said specifically that in that case they were doing dealing with an allocation, a failure to allow allocation. And it was ineffective. It was a collateral appeal claim. They said the court on if it would have been on direct appeal that the allocation. I see my time is up. I don't know if the court. Please go ahead with that. The court said in Gordon that even though the error there was if it was on direct appeal, it was an error and it was plain. We don't necessarily even though the standard in plain error and the prejudice prong of Strickland are the same. We don't necessarily apply them in the same way in collateral appeal. The court specifically found that deficient performance standard of ineffective assistance. The council claim will not always be satisfied by the failure to object to an obvious error. And it said specifically that council may decide for strategic reasons not to object. And then it went on to say that the Supreme Court precedent precludes the presumption in a collateral proceeding. And I would point out that the standard for prejudice in an ineffective assistance of council claim is but for council's error, the outcome of the proceeding would be different. You can't read out of that the council's performance part in that. Really, it's a reasonable probability of a different result. I mean, that's Strickland. I don't care what we've said since Strickland. That's what Strickland says. And I also point out that having a presumption like that of error in a collateral proceeding would be directly contrary to chronic. It's really not a presumption if you read Kennedy's opinion in Molina Martinez. He explains why different sentencing ranges in and of themselves create a reasonable probability of a different result. I don't agree with him, but he didn't ask me. He just said that was the law. I think it is. I really believe I read it as being imposing a presumption that can be rebutted with additional evidence. The court said you can't present any other evidence. So what we would have to hold is that reasonable probability of a different result means one thing in ineffective assistance of council prejudice determinations. It means another thing in third problem plain error prejudice determination. Same words. No, I disagree. I think the Gordon case, I'd urge the court to read that. I just provided this morning, but I think that it makes the distinction. It's because you have to have that. But for counsel's error, the outcome would have been different. Well, there's a connection. Strickland says is if it's outside the right wide range of reasonable professional assistance, then the prejudice prong is whether a reasonable probability of a different result. And that's exactly what the third prong plain error is interpreted by the Supreme Court is supposed to say. All right, we've got your argument. Miss Olmstead, three minutes. Thank you, Your Honor. At the time this case was tried, there was binding 11th Circuit case law that the weight of these liquids were challengeable. And therefore, defense counsel was required to be aware of that case law and make these challenges. I don't like this question. I didn't like it when I was lawyer. But what's your best case on that? You can give us two. I believe that U.S. v. Newsom and U.S. v. Rolande Gabriel are the best cases that show that unusable, unmarketable liquids or substances should be excluded from the definition of a mixture of substance that has a detectable amount of a controlled substance. And, Your Honor, I believe your observation about the magistrate's court decision is exactly right. That court below incorrectly determined that Rolande Gabriel and his progeny did not control. So the court below differentiated Mr. Griffith's case because in Mr. Griffith's trial, there was no testimony or factual findings regarding the usability or marketability of the drug mixtures. The court said that this type of evidence would have to be there in order for Rolande Gabriel to control. What the court misses is that the fact that defense counsel did not present this type of evidence is exactly why Mr. Griffith is claiming that his counsel was ineffective. The question should not have been whether Rolande Gabriel controls without the testimony that the liquids were unusable, but instead whether Rolande Gabriel controls if the facts asserted by Mr. Griffith are true. If the pled facts are true, then the liquids in this case were unusable and unmarketable, which would mean that Rolande Gabriel and his progeny controlled. If it turns out it's evident you're hearing battle experts or whatever that they were usable in the manufacture process, but you couldn't drink them at the time or sip them or whatever, then your client would lose, right? On prejudice. If they were usable in the manufacturing process, I think Newsom stands for the proposition that the government would have had to present evidence of how much could have been manufactured from that. The oil in that case, they did not the weight of the oil, but instead based it on the chemist's testimony of how much could have been produced from that. So I think the government would have to put on that type of evidence. Well, at the collateral stage, I could put it on there. I mean, yes, if you get a full blown evidentiary hearing, it'll be a bunch of chemists talking. Yes, and I think that that is appropriate based on what Mr. Griffith pled to have this evidentiary hearing. So he has the opportunity to prove his claims. OK, thank you. Thank you. Next case up, Thacker versus TVA. Thank you.